# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDA HOUSE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, acting )<br>Commissioner Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-14-1406-M |

## REPORT AND RECOMMENDATION

Defendant Acting Commissioner (Commissioner) issued a final decision denying Linda House's (Plaintiff) applications for disability insurance benefits and supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). Chief United States District Court Judge Vicki Miles-LaGrange referred the matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, the administrative record (AR), and the parties' briefs,[1] and recommends the court reverse the Commissioner's decision.

---

[1] When citing to the parties' briefs, the undersigned refers to this Court's CM/ECF pagination.

## I. Administrative proceedings.

Plaintiff applied for disability insurance benefits and supplemental security income alleging she became disabled on October 21, 2011. AR 10, 119. The Social Security Administration (SSA) denied Plaintiff's claims, and at her request, an ALJ conducted a hearing. *Id.* at 24-49. In his May 2013 decision, the ALJ found Plaintiff is not disabled and was not disabled from October 21, 2011, through the decision's date. *Id.* at 23. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-5, and Plaintiff now seeks review in this Court. Doc. 1.

## II. The ALJ's findings.

Following the well-established five-step inquiry to determine whether a claimant is disabled, the ALJ found Plaintiff: (1) met the insured status requirements through June 30, 2015; (2) has severe "degenerative disc disease; hepatitis C; major depressive disorder; posttraumatic stress disorder; and, history of heroin dependence, in reported sustained remission"; (3) has the residual functional capacity (RFC)[2] to perform light work and "is able to understand, remember, and carry out simple routine tasks"; and (4) can perform work in the national economy. AR 12-23; *see* 20 C.F.R. §§

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps).

## III. Plaintiff's claims.

Plaintiff challenges the Commissioner's decision on numerous grounds, including that the ALJ erred in rejecting Dr. Robert Danaher's opinion that Plaintiff's "ability to understand, remember and carry out simple and complex instructions in a work related environment would be rated as marginal." Doc. 13, at 6. The undersigned agrees reversal is necessary on that ground, and has elected not to address the remaining claims. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## IV. Analysis.

### A. Standard of review.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). The ALJ's "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for

3

reversal." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (citation and brackets omitted).

B.   **The ALJ's error in rejecting Dr. Danaher's opinion.**

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [a claimant's] symptoms, diagnosis and prognosis . . . ." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must "give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citation omitted). And even where, as here, the psychologist is an examining psychologist rather than a treating psychologist, the ALJ must "'provide specific, legitimate reasons for rejecting'" the medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (citation omitted). Further, an ALJ may not "'pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Id.* at 1292 (citation omitted).

At the SSA's request, clinical psychologist Dr. Danaher examined Plaintiff in October 2008 and December 2011. AR 291-96, 545-51. In 2008, he opined that Plaintiff's "ability to understand, remember and carry out simple and complex instructions in a work related environment would be

4

rated as fair." *Id.* at 296. Three years later, and after the date Plaintiff allegedly became disabled, Dr. Danaher examined Plaintiff again and had her perform a number of tasks and tests. *Id.* at 545-51. Dr. Danaher thereafter opined that "[f]rom a mental status standpoint [Plaintiff's] ability to understand, remember and carry out simple and complex instructions in a work related environment would be rated as marginal." *Id.* at 550.

The ALJ acknowledged Dr. Danaher's 2008 and 2011 opinions, but then wrote:

> Although he did not delineate [Plaintiff's] functioning in terms of simple instructions from her functioning with complex instructions, such statements suggest that the claimant's ability to perform complex instructions would be problematic; however, there is no indication that she would be precluded from performing simple instructions. The totality of the evidence reflects the claimant is capable of performing simple instructions for routine tasks[.]

*Id.* at 18. The problem is twofold.

First, Dr. Danaher clearly opined that Plaintiff had only a marginal ability to *carry out simple and complex instructions*. *Id.* at 550. The undersigned finds no explanation for the ALJ's interpretation of this statement as giving "no indication that [Plaintiff] would be precluded from performing simple instructions," except that he improperly injected his own speculations into the medical evidence. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'In choosing to reject the treating physician's

assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.'" (citation omitted)).

Second, the ALJ did not identify what evidence − in the "totality of the evidence" – contradicted Dr. Danaher's opinion. AR 18; *see also Chapo*, 682 F.3d at 1291 (holding the ALJ must "'provide specific, legitimate reasons for rejecting'" the medical opinion (citation omitted)); *Daniell v. Astrue*, 384 F. App'x 798, 802 (10th Cir. 2010) (reversing in part because: "The ALJ did not identify any contradictory or substantial medical evidence that outweighed the . . . physician opinions."). As noted above, reversal is warranted when the ALJ fails to "provide this court with a sufficient basis to determine that appropriate legal principles have been followed[.]" *Andrade,* 985 F.2d at 1047 (10th Cir. 1993).

### C. The Commissioner's arguments for affirmance.

The Commissioner tries unsuccessfully to salvage the ALJ's decision on three grounds.

#### 1. Plaintiff's ability to draw a clock.

To begin, the Commissioner points to Dr. Danaher's evaluation wherein he asked Plaintiff to draw a clock to test her "capacity to accurately follow

instructions" and "visual-spatial capabilities." Doc. 14, at 9; AR 548. The Commissioner suggests that because Plaintiff was able to successfully complete the task, AR 548, 551, the ALJ properly discounted the psychologist's opinion. Doc. 14, at 9. The undersigned disagrees.

First, while Plaintiff was able to draw a clock, she *could not* successfully count backwards from "100 subtracting by 7's," clap her hands every time the examiner read the letter "A" from a list of letters, or repeat sentences verbatim. AR 548-49. Dr. Danaher performed these tests to assess Plaintiff's concentration, comprehension, attention, alertness to details, vigilance, impulsivity, and ability to perform simple calculations. *Id.*

Second, Dr. Danaher opined that Plaintiff could only marginally understand, remember and carry out simple and complex instructions *despite the fact that she drew a clock*. Rather than salvaging the ALJ's opinion, the Commissioner's argument highlights the fact that the ALJ impermissibly substituted his own lay opinion for Dr. Danaher's medical opinion.

### 2. The State agency psychologist's opinion.

The Commissioner also argues the ALJ's holding can be read to have relied on the state agency psychologist's opinion that Plaintiff can perform simple tasks, and argues the reliance was proper because that expert "reviewed medical records related to Plaintiff's mental impairments,

including Dr. Danaher's report." Doc. 14, at 10 (citing AR 585). But when Dr. Edith King reviewed Dr. Danaher's report, she misquoted the psychologist's opinion as stating Plaintiff's "ability to understand, remember and carry out *complex* instructions in a work related environment would be rated as marginal." AR 585 (emphasis added). There is no indication Dr. King knew about or considered Dr. Danaher's opinion as it related to Plaintiff's ability to understand, remember and carry out *simple* instructions.

Additionally, Dr. King relied on Plaintiff's having completed her "GED and college work." *Id.* But the undersigned finds only one reference to this activity – in Dr. Danaher's report. *Id.* at 546. There Plaintiff stated she had attended school through 10th grade but "later completed the requirements for her GED and attended college briefly . . . ." *Id.* Again, Dr. Danaher had that information and still opined – after examining and testing Plaintiff – that she was only marginally capable of understanding, remembering and carrying out simple instructions. So, at best, Dr. King disagreed with Dr. Danaher as to whether Plaintiff's alleged education (obtained at an undisclosed time) suggested an ability to follow simple instructions. But as the examining psychologist, Dr. Danaher's opinion was deserving of more weight. *See Miranda v. Barnhart*, 205 F. App'x 638, 640-41 (10th Cir. 2005) (reversing in part because the ALJ "did not explain adequately" why the non-examining

8

physician's opinion "deserved greater weight" than the examining physician, when both physicians relied on the same evidence to form an opinion).

More importantly, the ALJ did not appear to believe Plaintiff had continued her education, finding she "consistently advises that she did not finish high school[.]" AR 22. The ALJ ultimately opined that Plaintiff "has a limited education . . . ." *Id.* So again, the evidence Dr. King relied upon is suspect.

For these reasons, the undersigned cannot say the ALJ properly relied on Dr. King's non-examining opinion to reject Dr. Danaher's examining opinion. *See, e.g., McDonald v. Astrue*, 492 F. App'x 875, 882 (10th Cir. 2012) (holding that when the medical expert has never examined the claimant, the weight an ALJ gives the opinion should depend "on the degree to which they provide supporting explanations for their opinions" and the consistencies of their opinion with the records as a whole).

### 3. Plaintiff's daily activities.

Finally, the Commissioner argues that in "considering the totality of the evidence about Plaintiff's ability to perform simple instructions, the ALJ also considered Plaintiff's reports of her daily activities." Doc. 14, at 10. The Commissioner states:

> The ALJ made particular note of the fact that Plaintiff was able to live independently; take care of her personal care needs; care

for her dogs; prepare simple meals; do yard work, including lawn mowing; perform household chores and repairs; drive, including driving herself to appointments; shop; handle food stamps; pay bills and use bank accounts; use a computer and email; visit with others; and sometimes eat with her family (Tr. 19, 161-168, 196-203, 218-225). This evidence further supported the ALJ's finding that Plaintiff could perform simple instructions for routine tasks, and his decision to discount Dr. Danaher's opinion to any extent it was inconsistent with that finding.

*Id.* at 10-11. The undersigned finds this unconvincing, as the ALJ's recitation of Plaintiff's daily activities was improperly selective.

For example, the record establishes that while Plaintiff lives alone, she receives significant help from her family members. Plaintiff testified that her "brother is pretty much taking care of [her] . . . ." AR 33. The record also reflects that in 2011 – when her impairments allegedly became disabling – Plaintiff did not have any pets[3] and only completed yard work and household repairs with "a lot of help" and only depending on if she is "manic or depressed." *Id.* at 197-98. Plaintiff also stated that she only shops "about [two] times a month," *id.* at 199, and "usually at night" so that she can avoid people. *Id.* at 42. Further, Plaintiff never testified to having or using a computer and denied having an e-mail address. *Id.* at 176. It was Plaintiff's

---

[3] In 2008, Plaintiff's sister stated that Plaintiff took care of pets. AR 162. By 2011, there was no mention of pets in any functional report. *See id.* at 197, 219.

10

sisters – not her – that provided e-mail addresses. *Id.* at 168, 180, 225. Notably, Plaintiff's siblings described her daily activities in a similar manner. *Id.* at 161-68, 218-25. The ALJ refused to give the sisters' functional reports any weight, in part because they were naturally biased towards Plaintiff. *Id.* at 21. Inconsistently however, the ALJ relied on both sisters' functional reports to describe (selectively) Plaintiff's daily activities and discredit her credibility.[4] *Id.* at 19 (citing Exs. 1E and 9E).

Based on the ALJ's selective reliance on Plaintiff's daily activities, the undersigned cannot say this evidence justified the ALJ's rejection of Dr. Danaher's opinion. *See, e.g., Sitsler v. Astrue*, 410 F. App'x 112, 117 (10th Cir. 2011) ("We have criticized this form of selective and misleading evidentiary review, holding that an ALJ cannot use mischaracterizations of a claimant's [daily] activities . . . .").

---

[4] For some of the reasons discussed, Plaintiff challenges the ALJ's credibility assessment. Doc. 13, at 9-12. The undersigned has declined to address that claim's merits, but does encourage the Commissioner, on remand, to take the opportunity to consider the ALJ's selective evidence recitation and inconsistent reliance on Plaintiff's sisters' testimony.

### D. The lack of harmless error.

The court may sometimes find that an ALJ's error is harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that a court may find an ALJ's error harmless if it can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). Here however, the vocational expert testified that if a hypothetical claimant with Plaintiff's limitations had only a marginal ability to understand, remember and carry out "simple and/or complex instructions," that person "would have difficulty obtaining and maintaining employment." AR 46. So, the undersigned cannot find harmless the ALJ's error in rejecting Dr. Danahar's opinion that Plaintiff has only a marginal ability to understand, remember and carry out simple instructions.

### V. Recommendation and notice of right to object.

The undersigned recommends the court reverse and remand the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation no later than November 5, 2015, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and

legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 16th day of October, 2015.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE